| | Not For Publication |
|---|---|

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
|                              |   |              |                |
|------------------------------|---|--------------|----------------|
| IN RE:                       | ) | CASE NO.     | 11-30512 (LMW) |
|                              | ) |              |                |
| RICHARD JOHN BUGLIONE,       | ) | CHAPTER      | 13             |
|                              | ) |              |                |
| DEBTOR.                      | ) | ECF NO.      | 63             |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

| | |
|---|---|
| George T. Holler, Esq.<br>Holler Law Firm, LLC<br>9 Research Drive, Suite 2<br>Milford, CT 06460 | Counsel for the Chapter 13 Debtor/Applicant |
| | |
| Patrick Crook, Esq.<br>10 Columbus Circle, 6th floor<br>Hartford, CT 06106 | Attorney for the Chapter 13 Trustee |

**BRIEF MEMORANDUM AND ORDER RE: APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION BY COUNSEL FOR THE CHAPTER 13 DEBTOR**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

**WHEREAS,** the matter before the court is that certain Application for Allowance and Payment of Compensation for Services Rendered by George T. Holler, Counsel for the Debtor (ECF No. 63, the "Application").[1] This court has jurisdiction over this matter (and the authority to enter

---

[1] References to the docket of this chapter 13 case appear in the following form: "ECF No. __."

a final order therein) as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[2]

## I. BACKGROUND/FACTS

**WHEREAS,** on or about March 1, 2011, the above-referenced applicant's (the "Applicant") law firm and the above-referenced debtor (the "Debtor")[3] entered into a certain "Contract for Chapter 13 Bankruptcy Services" (ECF No. 70, Exhibit B (the "Retention Agreement")). The Retention Agreement provided for a "base attorney fee" (the "Base Fee") of $3,500. (*See id.*, Exhibit B ¶ 2.) Included in the "Base Fee" were legal services in respect of "[d]rafting and filing objections to scheduled and unscheduled proofs of claim" (*id.* at 3). Pursuant to paragraph 3 of the Retention Agreement, certain other services were not subject to the Base Fee limitation. (*See id.* at 5-6.) The Debtor paid a $1,500 retainer (the "Retainer") against fee obligations incurred or to be incurred pursuant to the Retention Agreement. (*See* ECF No. 15.);

**WHEREAS,** this case was commenced by the filing of a voluntary petition on March 4, 2011. On March 16, 2011, the Debtor filed his proposed Chapter 13 plan. (*See* ECF No. 22.);

**WHEREAS,** the Applicant alleges as follows:

> The applicant informed the debtor at the time of filing that he must make post-petition mortgage payments directly [sic] the mortgage servicer beginning April 1, 2011. He also informed the debtor that payments to the trustee would be due within 30 days of filing of the case (*i.e.* April 3, 2011), and that both of these payments needed to be made throughout the duration of the case barring any changes. Debtor began making trustee payments as directed and sent in his first mortgage payment as well, but that check apparently was returned due to insufficient funds.

---

[2] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. , or arising in . . . a case under Title 11, U.S.C. . . . ."

[3] References hereafter to the Applicant are references to the Applicant and/or his law firm.

> The debtor never told the applicant of this fact, but instead the applicant found out when the mortgage company filed its motion for relief from stay.
>
> In order to meet his obligations, the debtor had counted on substantial contributions from his fiancèe and his father. At some point after the applicant filed the debtor's objection to proof of Claim #4, the debtor and his fiancèe had a disagreement which resulted in her moving out of the house. At that point she stopped contributing to the debtor's household. Shortly thereafter, the debtor's father lost his job and also stopped contributing to the household. Over the next few months the debtor managed to continue making the trustee payments, but never made a post-petition mortgage payment. During the summer of 2011 the debtor reconciled with his fiancèe, she moved back in and again contributed to the household. The debtors' [sic] father also found employment and began contributing.
>
> The applicant discussed these issues with the debtor, instructed him to continue making the trustee payment, and urged him to begin making the post-petition mortgage payments to the applicant's trustee account (since the mortgage servicer had filed for relief from stay and would likely refuse payment). The debtor continually assured the applicant that he would begin making such payments, but never did. Late in the summer he was involved in an auto accident where he totaled his car by hitting a telephone pole. At that point he missed work and incurred additional medical expenses.

(ECF No. 70 at 4-5.);

> **WHEREAS,** the Applicant further alleges that:
>
> On April 19, 2011, the purported first mortgage holder, U.S. Bank [the "First Mortgagee"] filed its claim (Claim #4). After reviewing the claim, the applicant contacted the debtor and told him that there were irregularities which could result in the claim being disallowed under the bankruptcy code. The applicant explained that while general objections to proofs of claim were included in the base fee pursuant to the retainer agreement he signed, this claim objection would involve advocacy far beyond what was contemplated in the retainer. The applicant further explained that the result of this advocacy could be a "significant" modification which would substantially reduce the arrearage, and allow the debtor to propose a less draconian chapter 13 plan. The applicant further explained that he was willing to perform this work with the understanding that this would be a non-base fee under the retainer.

(*Id.* at 2-3 (footnote omitted).);

> **WHEREAS,** the Applicant further alleges that:

>On August 22, 2011, the applicant filed an objection to the claim of the second mortgage creditor [the "Second Mortgagee"], Claim #7. That objection was based on similar arguments as asserted in the first claim objection, *i.e.,* a lack of standing. The endorsement by Steve Nagy was in issue again, but more fundamentally, it did not appear from the documents submitted with the claim that the trust had the original note. In fact the evidence seemed to indicate that another party, DBNTC had actually created the copy of the note submitted with the proof of claim. As such it appeared that the original note had never been delivered by the lender, and therefore the note was never negotiated to the trust.
>
>In addition, the pooling and servicing agreement and mortgage loan purchase agreement the applicant located on the Securities and Exchange Commission website seemed to indicate that the note had been, at best, *pledged* to the trustee creditor, but was in fact *owned* by another party. The applicant believed that the creditor could not reach the debtor's assets and therefore did not have a valid claim.

(*Id.* at 10-11.);

**WHEREAS**, on May 17, 2011, the Applicant filed a voluminous objection to the claim of the First Mortgagee in respect of the subject property (the "Property").[4] (*See* ECF No. 30.);

**WHEREAS,** on May 18, 2011, the First Mortgagee filed a motion for relief from stay in respect of the Property. (*See* ECF No. 35.) On June 14, 2011, the Applicant filed an objection thereto. (*See* ECF No. 39.) The primary basis for the objection was the pending claim objection (including lack of standing). (*See id.*);

**WHEREAS,** on January 26, 2012, the First Mortgagee filed a motion for summary judgment with respect to the relevant claim objection. (*See* ECF Nos. 60, 61.) That motion never was adjudicated;

**WHEREAS,** on August 22, 2011, the Applicant filed a voluminous objection to the claim of the Second Mortgagee in respect of the Property. (*See* ECF No. 49.);

---

[4] The Property is the Debtor's residence.

**WHEREAS,** the Applicant filed the Fee Application on February 24, 2012. (*See* ECF No. 63.);

**WHEREAS,** on the motion of the Chapter 13 Trustee (the "Trustee"), on February 24, 2012 the court issued an order dismissing the chapter 13 case. (*See* ECF No. 62.) It was announced on the record at the hearing thereon that, notwithstanding such dismissal, the court would retain jurisdiction over the Fee Application. (*See* Docket Entry for 2/24/2012.);

**WHEREAS,** the Fee Application was heard and taken under advisement (subject to briefing) on March 22, 2012. The Trustee filed her brief on April 9, 2012. (*See* ECF No. 69.) The Applicant filed his brief on April 11, 2012. (*See* ECF No. 70.);

**WHEREAS,** it appears that, after dismissal of the chapter 13 case, there remained in the Trustee's hands aggregate "good faith" and other payments made by the Debtor during the case of approximately $6,420.00 (the "Remaining Funds"). (*See* ECF No. 63 at 3.);

## II.    STANDARDS

**WHEREAS**, the award of compensation to estate professionals is governed by Bankruptcy Code § 330 which provides in relevant part:

> (a) (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)    (A) Except as provided in subparagraph (B), the court shall not allow compensation for –

    (i) unnecessary duplication of services; or

    (ii) services that were not –

        (I) reasonably likely to benefit the debtor's estate; or

> (II) necessary to the administration of the case.
>
> (B) In a . . . chapter 13 case . . . , the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section . . . .

11 U.S.C.A. § 330 (West 2013);

**WHEREAS,** the burden of proof to show entitlement to the fees requested in an application is on the applicant. *In re Chas A. Stevens & Co.*, 109 B.R. 853, 854 (Bankr. N.D. Ill. 1990);

**WHEREAS,**

> Fee awards are commonplace in Chapter 13 cases. The standard is familiar: a bankruptcy court may award reasonable fees to a lawyer for a chapter 13 debtor in line with "the benefit and necessity" of the services rendered. 11 U.S.C. § 330(a)(4)(B). Other considerations to be factored into the decisional calculus include the expertise of the attorney; the time expended by him; the reasonableness of the time given the nature, importance, and complexity of the case; and the reasonableness of the billing rates requested. *Id.* § 330(a)(3).

*In re Sullivan,* 674 F.3d 65, 69 (1st Cir. 2012). The appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive. *In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991). The fact that the Chapter 13 debtor derives some personal benefit from delay of creditor collection efforts does not constitute a benefit for purposes of awarding compensation to the debtor's attorney. *See In re Polishuk,* 258 B.R. 238, 248 (Bankr. N.D. Okla. 2001);

### III. POSITIONS OF THE PARTIES

**WHEREAS,** the Fee Application seeks allowance of compensation in the amount of $7,920 (the Retainer plus the Remaining Funds, the "Fee Amount"), with authorization of payment of the Remaining Funds to the Applicant.[5] (*See id.*);

**WHEREAS,** it is the Applicant's position that the Fee Amount (1) to the extent that it exceeds $3,500 (*i.e.,* the "Base Fee") is in respect of "Non-Base Attorneys Fees" subject to paragraph 3 of the Retention Agreement and (2) relates to services which were beneficial to and necessary "to the debtor" within the purview of 11 U.S.C. § 330(a)(4)(B);

**WHEREAS,** the Trustee orally objected to the Fee Application and subsequently supported that objection with a post-hearing brief. (*See* ECF No. 69.) In relevant part, the Trustee argued:

> The Trustee acknowledges that this case requires the court to balance conflicting policy considerations. On the one hand the Trustee acknowledges that the bankruptcy system benefits from fairly compensated debtor's counsel willing to explore novel legal theories. At the same time the Trustee believes that the court should not award fees for an unsuccessful Chapter 13 to the same extent as would be awarded for a successful case. This is particularly true where the objection to claim that generated the overwhelming majority of the fees sought was never decided by the court and was the subject of a pending motion for summary judgment at the time the case dismissed. The Trustee believes an additional fee of $4,000.00 [beyond the Retainer] strikes an appropriate balance between the two concerns.

(ECF No. 69 at 5-6.);[6]

**WHEREAS,** the Applicant responded in relevant part as follows:

> Notwithstanding this agreement, upon further review of the retainer by the applicant, arguably the filing of the objection could be included in the "base fee" of $3,500.00. Under Paragraph 2, the retainer defines the base fee as including a list of services, items (a) through (j). The retainer then states: "The base fee shall also

---

[5] The Debtor does not object to that request.

[6] The Trustee does not challenge any other aspect of the Fee Application. After its own review, neither does the court.

- 8 -

> include the following services to the extent they are requested or reasonably necessary for your effective representation." Below this sentence, subpart (b) states: "Drafting and filing objections to scheduled and unscheduled proofs of claim." In drafting the retainer agreement, the applicant intended this subpart to mean ordinary objections to proofs of claim, which typically take anywhere from 30 minutes to 1 hour to prepare and file. Nonetheless, other than discussing with the debtor that the contemplated objection to Claim #4 would be charged as a non-base fee, the applicant inadvertently did not explain this provision to the debtor. *Accordingly, the applicant respectfully submits that this Court would be justified in denying the applicant's fee to the extent it exceeds the base fee of $3,500.00.*

(ECF No. 70 at 3-4 (emphasis added, footnotes omitted).) That concession is consistent with Connecticut law. *See David M. Somers and Associates, P.C. v. Busch,* 283 Conn. 396, 406 n. 10 (2007) ("Although the . . . [rule against construing contractual ambiguities against the draftsman] has been applied in the context of insurance contracts, we see no reason to distinguish between insurance companies and other drafters with superior knowledge, particularly in the fiduciary context of the attorney-client relationship as an attorney has a duty to act in the best interests of his or her client.");

## IV. CONCLUSION

**WHEREAS,** based upon the Applicant's concession, *supra,* and the applicable Connecticut law cited above, the court concludes that, with respect to the Fee Application, (a) the Applicant has demonstrated that only $3,500 in fees should be allowed (*i.e.,* the Base Fee) and (b) $2,000 should be paid by the Trustee (*i.e.,* the Base Fee less the Retainer) to the Applicant.

It is **SO ORDERED.**

Dated: February 6, 2013                                BY THE COURT

*/s/ Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge